Terry *v.* Bissell.

OLIVER G. TERRY *vs.* GEORGE P. BISSELL AND OTHERS.

The defendants sold the plaintiff a note not then due purporting to be signed by A. and indorsed by B. The signature of A. was genuine, but the indorsement of B. a forgery. There was no express warranty of the genuineness of the indorsement, and neither party had any suspicion that it was forged. After the note had been protested for non-payment, the plaintiff discovered the fact of the forgery, and immediately offered to return the note to the defendants, and demanded the money paid for it. The defendants refusing

both to receive the note and to refund the money, he brought an action of assumpsit for money had and received. Held, that he was entitled to recover. [The chief justice dissenting.]

It being claimed by the defendants that after B. had learned the fact of the forgery of his name, he had pursued such a course of conduct as estopped him from denying the genuineness of the indorsement, and that therefore the indorsement was to be regarded as genuine for the purposes of the present case,—it was held that the plaintiff was not bound to incur the risk of a suit against B., but had a right at once to repudiate the contract, and demand back the money paid.

Assumpsit for money had and received.

The defendants, who were private bankers in the city of Hartford, and engaged in the business of buying and selling notes, on the 1st day of August, 1855, sold to the plaintiff a note of the following description.

"Hartford, July 19, 1855.   Sixty days after date I promise to pay to the order of George W. Gorton, three hundred and fifty dollars at the Charter Oak Bank.

George F. Gorton."

(Indorsed) "George W. Gorton, C. G. Smith."

The signature of the maker was genuine, but both the indorsements were forgeries.   The note at the time of the sale was the property of the defendants, and was sold without recommendation.   The plaintiff purchased it in reliance upon the responsibility of the second indorser, with which he was acquainted, not knowing that of the other parties.   The sale was made in entire good faith, neither party having any suspicion at the time, that the indorsements were forgeries.

The note was afterward protested for non-payment.   Soon after the protest, the plaintiff called on the said C. G. Smith, and informed him that he had the note.   Smith inquired the date and amount of it and said that he would see the maker about it.   At the time of this interview Smith knew that his name upon the note was forged, but did not disclose the fact to the plaintiff.   At the time of the sale of the note, the maker was in business, and the owner of a store of goods in the city of Hartford, which he commenced selling at public auction from time to time about the 5th of September, 1855, and finished selling about the 1st of October following, and

Terry *v.* Bissell.

immediately thereafter absconded. After the note became due, and at the time of the interview between the plaintiff and Smith, there was property belonging to George F. Gorton in his store, upon which the note could have been secured by an attachment, but the plaintiff did not know that the indorsements were forgeries until after Gorton had absconded. On being informed of that fact he immediately offered to return the note to the defendants, and made demand of the amount paid for it, and at the same time informed them of his conversation with Smith. He also made demand of the amount of the note of Smith, and of George W. Gorton, the other indorser. The latter resided four miles from the city of Hartford, where the plaintiff resided. He was duly notified of the non-payment, but did not communicate the fact that his name was forged until after the maker had absconded. The maker was still absent in parts unknown, and insolvent.

On these facts the case was reserved by the superior court for the advice of this court.

*Perkins* and *Hooker*, for the plaintiff.

1. There was an entire failure of the consideration on which the money of the plaintiff was paid to the defendants. He contracted for the note of the parties whose names appeared on the note, not for a note upon which their names had been forged. The fact that the signature of the maker is genuine, and that the note may have some little possible value, is of no consequence, since it is not the thing that the plaintiff undertook to purchase and the defendants to sell. That the money paid may in such a case be recovered back on the ground of a failure of consideration, see *Gurney* v. *Wormsley*, 28 Eng. L. & Eq. Rep's., 256; Am. Law Register, May, 1856, p. 433; *Fuller* v. *Smith*, Ry. & Moody, 49; *Jones* v. *Ryde*, 5 Taunt., 488; 1 Pars. on Cont., 218.

But it is claimed that a recent well-considered case in Maine, (*Baxter* v. *Duren*, 29 Maine, 434,) has decided that there is no liability on the part of the innocent vendor of forged paper, where there is no express warranty, either on the ground of failure of consideration or of implied warranty,

and that this decision is supported by the dictum of Chitty on Bills, (10 Am. Ed., 245, 6,) and a note of the editor of the last edition of Story on Promissory Notes, (sec. 118, note 4,) as well as by the authorities cited by the court in giving their opinion. The cases cited by the court are *Bank of England* v. *Newman,* 1 Ld. Raym., 442; *Fenn* v. *Harrison,* 3 T. R., 7ɔ7; *Fydell* v. *Clark,* 1 Esp., 447; *Emly* v. *Lye,* 15 East, 6; *Ex parte Shuttleworth,* 3 Ves., 368, and *Ex parte Blackburn,* 10 id., 204; all which are cases where the vendor of a note not indorsed by him was held not to warrant the responsibility of the parties to the note; and the case of *Ellis* v. *Wild,* 6 Mass., 321, where, in a decision made in 1810, and without the citation of a single authority, the court make the distinction which is found in the case of *Baxter* v. *Duren.* The court also refer to the case of *Price* v. *Neal,* 3 Burrows, 1354, which however turned upon the point of the duty of a drawee to know his drawer's signature, and is therefore no authority against us, while it is also spoken of disparagingly by later authorities, (see note on p. 1357); and to the case of *Bree* v. *Holbeck,* Doug., 654, in which the point here in question was not directly involved, and the remarks of the judge are mere *obiter dicta,* and are besides spoken of dis-approvingly by later judges. Chitty on Bills, (10 Am. Ed., 245,) contains nothing that warrants the distinction assumed to exist, but something that directly militates against it, and in the late editions of Story on Promissory Notes, the editor merely states that it has been decided that no recovery can be had against an innocent vendor in such a case, and refers to this case of *Baxter* v. *Duren,* and to a few of the other authorities above named in support of the statement.

2. The authorities however are nearly unanimous in sus-taining the position, that the vendor of such paper is liable as a warrantor of its genuineness. If perhaps in the present form of action we can not recover on this ground, yet these authorities are pertinent as going to show the incorrectness of the decision in *Baxter* v. *Duren,* which holds that there can be no recovery in such case on any ground whatever. *Shaw* v. *Ehle,* 16 Johns., 201. *Murray* v. *Judah,* 6 Cow., 484,

Terry *v.* Bissell.

491. *Coolidge* v. *Brigham,* 1 Met., 547. *Lobdell* v. *Baker,* 3 id., 469, 472. *Thrall* v. *Newell,* 19 Verm., 203. *Glass* v. *Read,* 2 Dana, 168. *Gurney* v. *Wormsley,* 28 Eng. L. & Eq. R., 256. *Fuller* v. *Smith,* Ry. & Moody, 49. *Jones* v. *Ryde,* 5 Taunt., 488. *Gomfarts* v. *Bartlett,* 24 Eng. L. & Eq. R., 156. 1 Pars. on Cont., 218.

3. No facts that have occurred since the sale of the note to the plaintiff can affect his right to recover. 1st. There has been no laches on our part. We offered to return the note the moment we learned of the forgery. We were not bound to sue the maker as soon as the note was protested, as we had every reason to regard the note as good and safe, and sure to be paid soon. 2d. The conduct of Smith, creating a possible liability to pay the note although his name was forged, can not affect our rights as against the defendants. We are not bound to incur the risk and cost of a lawsuit with him to settle the question of his liability. His possible liability is not the result of any negligence or waiver of ours, but a mere incident that we are in no manner responsible for, and which is as beneficial to the defendants as to us. Besides, his possible liability does not after all make the note what we bought it for, namely, a genuine note. A forged note on which the supposed indorser may by some means be held liable, is a very different thing from a genuine note. Again, if we resort to Smith, we may be defeated in a suit against him, and then we are remediless. It is equity and common sense that the defendants should refund our money, take back the note, and make what they can out of Smith for themselves. 3d. Even if Smith's indorsement is thus *quasi* genuine, or obligatory, the indorsement of Gorton's name still remains a forgery, and although we may have relied mainly on Smith's name in purchasing the note, yet we bought it as a note indorsed by both, and as genuine throughout. And if it be claimed that Gorton has also by his conduct made himself liable on his indorsement, then the same considerations already suggested with regard to the liability of Smith, apply to his case. It is not a matter for us to experiment upon, but for the defendants

to litigate with Smith and Gorton, after they have, by paying us, become again the owners of the note.

*L. F. Robinson* for the defendants.

First. The money which the plaintiff seeks to recover, was paid upon the sale of a specific chattel; both buyer and seller having an opportunity of inspecting the thing sold at the time of purchase, they were *in pari casu*, and the transaction was at the risk of the buyer.

1. The sale of mercantile paper is subject to the same rules of law as those which apply to the sale of other chattels. Although, therefore, a payment in forged paper is a nullity, and the obtaining of a loan on forged securities renders the borrower liable to refund, the innocent vendor of fictitious securities is not liable as a guarantor by implication of their genuineness. *Bree* v. *Holbech*, Doug., 654. *Baxter* v. *Duren*, 29 Maine, 434. *Ellis* v. *Wild*, 6 Mass., 321. *Markle* v. *Hatfield*, 2 Johns., 455. The cases in which a contrary doctrine has been held, generally proceed upon the assumption that in such a sale there is an implied warranty of the genuineness of the paper. This is a clear departure from the analogies of the common law. *Herrick* v. *Whitney*, 15 Johns., 240. *Shaver* v. *Ehle*, 16 id., 201. *Murray* v. *Judah*, 7 Cow., 484, 491. *Jones* v. *Ryde*, 5 Taunt., 488. *Gurney* v. *Womersley*, 28 Eng. L. & Eq., 257. *Reiman* v. *Fisher*, 4 Am. Law Reg., 433. *Buck* v. *Doyle*, 4 Gill., 478. *Ritchie* v. *Summers*, 3 Yeates, 531. Similar suggestions in the following cases are mere *dicta*. *Glass* v. *Read*, 2 Dana, 168. *Bank of St. Albans* v. *F. & M. Bank*, 10 Verm., 141.

2. The term "warranty" is entirely inapplicable to the transaction in question. A warranty is a promise collateral to the contract of sale, and relates to the quality or condition of the subject matter of the sale. *Chanter* v. *Hopkins*, 4 M. & W., 399.

3. It is conceded, however, that where the article sold is not that for which it was agreed to be sold, there is a non-performance of the undertaking of the seller. *Gardiner* v. *Gray*, 4 Camp., 144. *Jones* v. *Bright*, 5 Bing., 533. *Bridge*

v. *Wain,* 1 Stark., 504. But this rule is not applicable to the executed sale of a specific chattel, in existence at the time, and exhibited to the purchaser, who buys on his own judgment. *Burnby* v. *Bollett,* 16 M. & W., 644. *Chanter* v. *Hopkins,* 4 M. & W., 399. *Brown* v. *Edgington,* 2 Scott, 504. *Sands* v. *Taylor,* 5 Johns., 395, 404. *Holden* v. *Dakin,* 4 id., 421. *Moses* v. *Mead,* 1 Denio, 378. 1 Smith's Lead. Cas., 184. In Connecticut, the doctrine of *caveat emptor* has been adopted to the full extent. If the vendor sells the thing as he believes it to be, the law will not imply that he sold it on any other terms than those expressed. *Dean* v. *Mason,* 4 Conn., 428, 432. There is nothing in the nature of the transaction from which an undertaking relative to the genuineness of the indorsements should have been implied. The buyer did not rely, and the seller did not intend that the buyer should rely, upon the judgment of the vendor in reference to the genuineness of the paper. When securities are bought on speculation the purchaser is as likely to know the handwriting of the parties to the bill or note as is the seller. He does not depend on the skill of the latter.

4. Assumpsit will not lie to recover back money when the parties are *in pari casu.* *Gates* v. *Winslow,* 1 Mass., 65.

Second. At the time when the forged paper was tendered back, the fictitious indorsements had been ratified, and the note was a valid instrument in the hands of the plaintiff, and he could no longer allege a failure of consideration; he can not therefore recover.

A fictitious signature is *civiliter* an unauthorized act, capable of subsequent ratification by the party whose name is wrongfully used. *Weed* v. *Carpenter,* 10 Wend., 403. *Crout* v. *De Wolf,* 1 R. I., 393. *Barber* v. *Gingell,* 3 Esp., 60. *Leach* v. *Buchanan,* 4 id., 226. Forged paper is not a legal nonentity. It is to be treated as genuine, as against negligent parties; as for instance, banks paying bills purporting to be their own, and acceptors who have accepted drafts in which the name of the drawer is fictitious. *Levy* v. *U. S. Bank,* 4 Dall., 254. The indorsers, Smith and Gorton, by their fraudulent concealment from Terry of the fact of the

forgery until the maker of the note, who committed the forgery, had disposed of his property and absconded, are estopped from denying, as against Terry, the genuineness of their signatures. When the result of the wrongful represent-ation of another is the loss of a remedy, the principle of estoppel will apply. *Kingsley* v. *Vernon*, 4 Sandf., 361. *Raymond* v. *Barr*, 13 S. & R., 318. *Pindall's Ex.* v. *N. A. Bank*, 7 Leigh, 617. The principles of estoppel apply to the willful concealment of facts when another is thereby induced to change his condition to his own injury. *Shapley* v. *Range-ley*, 1 Wood. & Minot, 213. The estoppel should enure to the benefit of the defendants, which would not be the result if the right of the plaintiff to return the forged note at the time of the tender was recognized. *Preston* v. *Mann*, 25 Conn., 118. *McRae* v. *Kennon*, 1 Ala., (N. S.,) 295.

ELLSWORTH, J. The question made in this case is, whether the sale of this note to the plaintiff is a sale of a specific instrument, just as it is, true or false, or a note of hand truly indorsed as it purports to be by George W. Gor-ton and C. G. Smith. If it be the former, the plaintiff can not recover; if the latter, then, in the opinion of a majority of the court, he can.

The case does not differ in principle, we think, from what it would be if the maker's name had likewise been forged, when we should have before us a simple case of the clearest equity and natural justice.

The motion shows that this note was sold by the defend-ants for themselves and not in any delegated capacity for another, which latter circumstance indeed would make no difference if it were not known to the plaintiff, and hence the defendants are liable to refund if any body is liable beyond the maker, who of course is, for his signature is genuine and obligatory.

The plaintiff seeks to recover back the sum he paid for the note, having first tendered the note to the defendants, on the ground that he has not received what he bought and paid for, the genuine indorsements of George W. Gorton and C.

G. Smith, but only their simulated and void signatures, and that the contract between the parties is founded in mistake of fact and may be repudiated.

No question is made as to the entire integrity of the defendants, who intended to sell and supposed they did sell to the plaintiff a note well and truly indorsed as this purports to be. It is equally true that the plaintiff intended to buy and supposed he did buy just such a note, and neither of the parties thought of any thing else. Certain it is then that both parties were mistaken in a fact of vital importance, so that in truth the plaintiff has parted with his money without the equivalent which both parties expected he would receive. The essential value of the note lying in the validity of the indorsements, when the indorsements failed the note was no better than a blank piece of paper. Though the maker was bound, yet he was insolvent and had absconded to parts unknown. It is an indorsed note in form only, a bit of paper with ink on it, quite unlike the thing supposed to be sold by one party and purchased by the other. Who shall bear this loss? This is the question. And we must think that, in law and morals, it is a question of easy and ready solution.

There are several views of the case, all of which will lead to the same conclusion. In the first place, there was no sale, because the subject matter of the sale had no existence. A sale is defined by Blackstone to be "a transmission of property from one man to another, in consideration of some price or recompense; there must be *quid pro quo.*" Parsons, in his work on Contracts, (vol. 1, p. 436,) says, an exchange is giving one thing for another thing, while a sale is the giving one thing for that which is the representative of all things. He goes on to say, that the existence of the thing to be sold, or the subject matter of the contract, is essential to the validity of the contract. If a horse which has died, a fact unknown by the parties, is sold at the present time, or goods which have been burned, the sale is not good, for the very basis of the negotiation and transfer is wanting. Indeed, it is clear law, that if a substantial part of the thing sold be non-existent,

there is no sale.   Chancellor Kent, in his Commentaries, (2 Kent's Com., sec. 39, p. 469,) says, that in such a case the buyer has his option to rescind the sale.   This is the law in the Code Napoleon, (see § 1658.)   In *Farrar* v. *Nightingale*, 2 Esp., 639, Lord Kenyon said, " I have often ruled that where a person sells an interest and it appears that the interest which he pretended to sell was not the true one, as, for example, if it was for a lesser number of years than he had contracted to sell, the buyer may consider the contract as at an end, and bring an action for money had and received to recover back any sum of money he may have paid." These principles are strictly applicable to the case under consideration.   The signatures of Mr. Gorton and Mr. Smith, which alone gave value and credit to the note, not being legally attached to the note, it is not the thing which was negotiated for between the parties, any more than the dead horse can be said to be the horse sold, because the lifeless body remains and the hide and shoes are of some little value. The names of Mr. Gorton and Mr. Smith are no more on the note than if nothing was written on it at all, and without these names  the thing is substantially worthless.

Suppose the defendants had proposed to sell and had sold a bar of metal as gold, which turned out to be mere dross, colored and disguised, without a particle of gold; or a barrel of flour which was examined on the surface, but below was mere saw dust or gravel; or a barrel of beef which turned out to have one layer of beef and the rest was brickbats and stones; or a box of chisels which turned out to be scrap iron; would the seller be permitted to insist that it was a sale and keep his money?   We think the purchaser was entitled to have a thing of the kind and description which the thing sold purported and was understood to be.   We say nothing of quality, for as to that the maxim *caveat emptor* applies, but only of kind and description, to which the maxim is not supposed to apply, for the seller assumes the existence and title of the thing itself in his offer to sell, unless indeed there be some provision in the contract to the contrary.   Now, in this case, the parties assumed, as the very basis of their negotia-

tion, the genuineness of the indorsements. They understood each other as bargaining for a true and genuine note, and not for a feigned and spurious one, or one which might possibly turn out to be such. No risk was thought of as entering into the consideration to be paid, or into the value and character of the paper. As we have said, both parties assumed the value of the note to be a fixed quantity, subject only to the insolvency of those persons whose names were on it. Common justice then requires that the parties shall continue to treat each other in accordance with the truth of this assumption, and since they were mistaken in an all-important fact, neither of them should be allowed to take advantage of the other, but be remitted to their former condition and rights.

We believe the law to be, in the sale of notes and other instruments, if not of chattels generally, that the thing shall correspond in kind and description with what it purports to be and is sold as being at the time of sale, and that the cases to which we will refer, most fully support this principle of law. *Gumpertz* v. *Bartlett*, 24 E. L. & Eq., 156, is a very recent case. There the defendant sold the plaintiff an unstamped bill, purporting on the face of it to have been a foreign bill, drawn in Sierra Leone and accepted in London, but which it appeared in fact was drawn in London. There was no warranty nor fraud. The acceptor having failed, the plaintiff was obliged to take up the bill, and having done so, sued the defendant to recover back the money he had paid him for it. In the defence, the fact was relied upon that the defendant did not indorse or warrant the bill, but sold it as it was, and he claimed that as this was all fair and honest on his part, he was not responsible, although the bill did not turn out to be what it purported to be. The court, however, held him liable. When the case was tried at *nisi prius*, Campbell, Ch. J., nonsuited the plaintiff, but on the final trial he changed his opinion. In the opinion which he then gave, and in which all the other judges concurred, he says, "On the face of this bill, it purported to be drawn at Sierra Leone, and it must be taken as answering the description of that which on its face it purported to be. That amounted to a

warranty that it really was of that description. In point of fact it was not a bill of that description. It is not a foreign bill, but was drawn in London, and payment of it could not be enforced here. This is not the case of a sale of goods answering the description of the goods sold, and a secret defect in the goods, but it is the case of a thing which is not what it purported to be when sold, and upon this ground I think the money must be taken to have been paid upon a mistake of fact, the bill not answering the description of that sold." In the same case Coleridge, J. says, " A vendee is entitled to have a thing of the kind and description which the thing sold professes to be at the time of the sale. Here, in the absence of all fraud, both parties thought they were dealing about a foreign bill, which on the face of it this bill purported to be, and it turns out not to be a bill of that kind and description, and therefore of no value. On the face of it the bill purports to be a foreign bill of exchange, not requiring a stamp. It turns out, however, that so far from answering the description of that for which it was sold, it was not a bill drawn at Sierra Leone, but an inland bill requiring a stamp, and therefore not a valid bill in any court of law." In *Jones* v. *Ryde*, 5 Taunt., 488, which was assumpsit for money had and received, the plaintiff had received from the defendant what purported to be a navy bill, but it had been altered in the hands of a prior holder, and he sought to recover back his money, on the ground that there was a mistake of fact, and he had not got the thing he bought. Gibbs, J. says, " Both parties are mistaken in the view they had of this navy bill, the one in representing this to be a navy bill of this description, the other in taking it to be such. The defendant has put off this instrument as of a certain description; it turns out not to be a navy bill of that amount, and therefore the money may be recovered back." Dallas, J. says, " This is a case where the parties are equally innocent and have equal knowledge and equal means of knowledge. I have no doubt whatever of the plaintiff's right to recover." The law is held to be the same in *Cripps* v. *Read*, 6 T. R., 606. In *Gampertz* v. *Bartlett*, Wightman, J. says, that there

is an implied warranty that an instrument thus sold is genuine, though there is none that the parties are solvent, and he cites for this Byles on Bills, 266.    In *Bridge* v. *Wain*, 1 Stark., 504, the plaintiff bought and received goods as scarlet cuttings, and they were so described in the bill of sale, but it turned out that they did not belong to that description of goods, and on suit brought by the vendee, Ld. Ellenborough held that if they were sold by the name of scarlet cuttings, and were so described in the invoice, an undertaking that they were such must be inferred; and remarked that to satisfy an allegation that they were warranted to be of any particular quality, proof must be given of such a warranty, but that a warranty would be implied that they were that for which they were sold.    *Fuller* v. *Smith*, 1 Ry. & Moo., 49, is to the same effect.    In *Murray* v. *Judah*, 7 Cowen, 484, and *Shower* v. *Ehle*, 16 Johns., 201, where in both cases a witness who had sold a note was offered to testify, he was rejected because he was held liable, by legal implication, for the genuineness of the paper, but not for the solvency of the parties.    In *Hogins* v. *Plympton*, 11 Pick., 97, 99, Shaw, Ch. J. says, "There is no doubt that in a contract of sale, words of description are held to constitute a warranty that the articles sold are of the species and quality so described."    Again, he says, in *Lobdell* v. *Baker*, 3 Met., 469, " When, therefore, a man, for a valuable consideration, puts into circulation a note bearing the name of a blank indorser, with nothing to rebut the natural inference to be drawn from it, he by necessary implication affirms that the indorser is a person capable of indorsing and binding himself by such indorsement.    Such inference may be repelled, &c.    *    *    *    There is a manifest difference in such case between a minor, one not bound by a contract, and a person who, though his personal responsibility is not such as adds much strength to the security, does yet bind himself.    Whoever takes a negotiable security, is understood to ascertain for himself the ability of the contracting parties, but he has a right to believe, without inquiry, that he has the legal obligation of the contracting parties appearing on the bill or note."    And in the very late case of *Cabot*

*Bank* v. *Morton*, 4 Gray, 156, the court say, " The general rule is, that in every sale of personal property the vendor impliedly warrants that the article is in fact what it is described and purports to be, and that the .vendor has a good right or title to transfer it." In *Gardiner* v. *Gray*, 4 Camp., 144, twelve bags of waste silk were sold by that description, but it was found not to be saleable under that denomination, and Ld. Ellenborough held that the plaintiff was entitled to a saleable article, answering the description in the contract. He says, " Without any particular warranty, there is an implied warranty in every such contract. He can not, without an express warranty, insist that it shall be of any particular quality or fineness, but the intention of both parties must be taken to be, that it shall be saleable in the market under the denomination mentioned." In *Gurney* v. *Wormsley*, 28 E. L. & Eq., 256, the court held that the vendor of a bill of exchange, though no party to the bill, is responsible for its genuineness, and if it turns out that the names of the parties are forged and the bill becomes valueless, he is liable to the vendee. Coleridge, J. says, " It seems to me to fall very much within the same principle as the case referred to, of a sale of a bar of gold, or the forged navy bill." Wightman, J. says, " As to the other point, it has been put upon the ground that the plaintiffs had all that the defendants had undertaken they should have, but it seems to me that the bill is not in truth what the defendants undertook to sell." Ld. Campbell, Ch. J. says, " The defendants, though not liable for the solvency of the parties to the bill, are liable for the genuineness of the instrument, and for its being what it purported to be." The same is decided in *Thrall* v. *Newell*, 19 Verm. R., 202, and in *Beeman* v. *Fisher*, in the supreme court of Baltimore city, Law Reg., May, 1856. The two latter cases are directly in point. The same law is found in Chitty on Bills, and in Story on Promissory Notes. The only case I have seen to the contrary is *Baxter* v. *Duren*, 19 Maine R., 434. The opinion in that case is announced in few words, without much argument, and the only cases cited by the court in support of the opinion, are to the effect that the seller of a bill

Terry *v*. Bissell.

is not liable for the solvency of the parties to it. In *Ellis* v. *Wild*, 6 Mass., 321, the facts show that there was a clear specific exchange of a quantity of rum for a certain note, and no sale as in the present case. The case in Douglass, (*Bree* v. *Holbeck*, p. 654,) is not contrary to the doctrine we have laid down or the cases cited in support of it, for that is the case of a sale by a known trustee, who, like an executor or sheriff or other public officer or like an auctioneer, is not presumed to sell any greater or different interest than what he holds in his representative character. The defendant was an administrator, and was understood, or should have been, to sell only what the intestate owned, whether it was more or less. *Mockber* v. *Gardner*, 2 Har. & Gill, 176. *Ricks* v. *Dillahunty*, 8 Port., 133. It would be inconsistent to hold that a person who in his representative character sells the property of the one he represents, should be made by legal implication to sell what he does not possess in that character. He neither undertakes for the goodness, quality, or title of the property he sells, nor for the genuineness, value, or title of an instrument he assigns. This doctrine is fully sustained in *Dow* v. *Lewis*, 4 Gray, 468. The administrator could not bind the estate if he would, by a warranty of title, and if so, it can not be presumed that he was treated with as assuming, or was expected to assume upon himself, any personal responsibility as administrator. Such responsibility should and would have been the subject of an express stipulation at the sale, if any thing of the kind was really expected and intended. Other distinctions are applicable to that case, if it were important to pursue the subject, but we forbear, because we are fully satisfied that the case is not at variance with the doctrine we are advocating.

The counsel for the defendants insist that the transaction between the parties was a sale of a specific piece of paper, and nothing more, and that the transaction is to be governed by the law of that class of cases, where, if there be no warranty, there is no undertaking as to the quality or goodness of the article sold. In our judgment, the transaction bears a much stronger resemblance to the class of cases in which

it is held that there is an implied warranty of title; and here Mr. Terry acquired no title to the indorsements of Mr. Gorton and Mr. Smith. Undoubtedly the law is as claimed by the defendants, that there is no implied warranty of the soundness and quality of an article, where it is open to the observation of the purchaser, and he is justly expected to examine the quality for himself, and to rely on his own judgment. In such case, there being no fraud or concealment on the part of the seller, there is no liability for the quality. The purchaser gets the specific thing he agreed for, the very thing in kind and description; and since quality and goodness are not within the contract of the parties, why should the purchaser complain of his bargain? But here the thing sold is a counterfeit, a pretence, a nonentity. Here Mr. Terry was not called upon to examine the signatures of the indorsers, nor was there the slightest expectation on the part of Mr. Bissell that he would examine them, for the purpose of deciding for himself as to their genuineness. Mr. Bissell handed the note to Mr. Terry as a genuine one in all respects, and the risk of its not being so was not taken into the account. The note itself was not considered or thought of as any thing different from what it purported to be. No discount was made for the possibility of such a thing as a forgery. The seller, as we have said, sold it as genuine, and received his full consideration for it as genuine, and to us it seems contrary to good faith and sound morality for him to insist that the purchaser took the risk of forgery upon himself, and paid his money merely for a piece of paper, six inches by three, with ink upon it in the form of letters and figures. The Latin maxim of *caveat emptor* is not applicable to such a case.

In some of the cases which we have cited and commented on, it is said that where there is a mutual mistake of fact, there is not a sale, because there is a failure of consideration; in others because there is an implied warranty of genuineness, or of kind and description; and still in others, because the thing is not in existence: but the true idea is, as I think, that if the thing contracted for is essentially non-existent, there is

nothing to sell and transfer, no subject matter for an intelligent and perfect understanding between the parties. The parties may undoubtedly bind themselves by express agreements as they please, but where the thing intended to be sold and transferred does not exist, as if the horse be dead, the ship lost, the goods burnt, or the instrument forged, there can be no sale, unless we adopt a new definition of that legal term.

Again, it is clear law, as laid down in the books, that if these defendants had made an executory agreement with the plaintiff to procure for him a note indorsed by George W. Gorton and Chauncey G. Smith, he must have procured just such a note, and the delivery of any other would not have been a fulfillment of the agreement; but we ask in what, in principle, consists the difference between that case and the present. In the case supposed, the parties would have understood that the indorsements were material and were to be genuine and obligatory, and in the present case they understood just the same thing, or there would have been no sale of the note. When the defendants brought out and presented to the plaintiff the note in question, to be sold and transferred to him, they must be presumed to have said, if not in words, yet in the transaction itself, that the note they were offering to sell was what it purported to be and nothing less or different. As to solvency, it was understood the plaintiff must judge for himself, but as to the existence of the note, of this exact note, it was assumed to be just what it appeared to be. So that whether the note was to be procured, or had been procured and was then present before the parties ready to be delivered, seems to us to be essentially the same thing. In both cases the parties intended that the plaintiff should receive a genuine instrument, and on this understanding alone the negotiation was perfected.

So likewise, all the cases show that if the note had been transferred to the plaintiff in payment of an existing debt, or was discounted at a bank or elsewhere, the defendants would be responsible for the genuineness of the indorsements, for a payment in forged paper is no payment at all, and a discount

of forged paper is the obtaining money through a mistake, and without an adequate consideration. But if forged paper is nothing when given in payment, and nothing where money is obtained by the discount of it, why is it any more in the present case, unless indeed the case shows that it is to be understood that the parties made the risk of the note not being what it was sold as being, the risk of the plaintiff, of which there is not a particle of evidence, and which can no more be presumed in the case of a sale, than in the case of a payment of an existing debt, or a discount at a bank. Suppose goods or chattels are taken in payment of an existing debt, and the title fails, would this be payment? It would be, if there was no difficulty in the title, however defective in quality, but not if the title failed, as in that case the creditor would not get what he agreed to take, and what he was to have.

There is yet another view of this case which is decisive against the defendants. When the defendants brought out this note and offered it to the plaintiff for sale as being their own property, they must be understood as presenting it as a genuine note, like what it purported to be. If this be so, then we think this is a representation which, according to the books, constitutes a warranty that the note is a real note and really indorsed as it appears to be. There is no universal rule determining what words or representations are necessary to make a warranty, yet the cases are numerous that a verbal representation by the seller of an article, or a description of it in a bill of sale, is a warranty that the article is of the kind and description which it is represented to be. In *Barr* v. *Gibson*, Parke, J. says, that the bargain and sale of a chattel as being of a particular description, does imply a contract that the article sold is of that description; and he cites several authorities in support of the doctrine. In *Shepard* v. *Kain*, 5 Bar. & Ald., 240, the court say, " The meaning of the advertisement must be, that the seller will not be responsible for any fault which a copper-fastened ship may have; with 'all faults' must mean, with all faults which it may have consistently with its being the thing described. Here the ship was

not a copper-fastened ship at all, and therefore the verdict was right." In *Lobdel* v. *Baker*, supra, the court held that the disposing of the note (indorsed by one who was under age,) for a valuable consideration, was, by necessary implication, an affirmance that the indorser was a person capable of indorsing, and of binding himself by such indorsement. It is said by Mr. Rand, in his valuable edition of Long on Sales, (p. 204,) that there is an implied warranty in every sale that the thing sold is that for which it is sold, and the cases cited by him seem to sustain the doctrine. Judge Hall, in giving the decision of the court in *Thrall* v. *Newell*, 19 Verm., 202, says, that this rule seems well applicable to the sale of written evidence of a liability, where the purchaser usually takes it for granted that the paper is genuine. See *Tye* v. *Fynmore*, 3 Camp., 462; *Gardiner* v. *Gray*, 4 Camp., 144; *Bridge* v. *Wain*, 1 Stark., 504; *Shepard* v. *Kain*, 5 Barn. & Ald., 240; *Hastings* v. *Lovering*, 2 Pick., 214, and *Coolidge* v. *Brigham*, 1 Met., 547. In the last case it was held that a letter from the defendant to the plaintiff, inclosing a note and describing it as signed and indorsed by the persons whose names appeared upon it, was an express warranty that it was so signed and indorsed, and the indorsement proving to be a forgery, the defendant was held liable for an express warranty. There are other cases in the books to the same point, but I must not proceed further. On each of the grounds stated in this opinion, I am satisfied the plaintiff is entitled to recover.

There is another question made in the case by the defendants' counsel, which we will here briefly notice. It is said that however the doctrine may be on the main question in dispute, the indorsements can not be denied after what has taken place between the parties, and that the plaintiff is estopped by his own act after he had learned the note had been demanded and protested, by his acquiescence and silence as to any forgery. Were this an action against Mr. Smith, and the evidence against him the same, as the present parties have agreed it may be held to be for the purposes of this trial, we think a jury might perhaps find that Mr. Smith was liable; but it is not an action against him, and

we have no right to say how the facts would appear were he on trial instead of the defendants. And as to Mr. Gorton, the other indorser, taking the testimony as it now stands, we think he could not be held liable at all, and if he is not liable, then the note is not what it purported and is warranted to be, and the money should be returned. Besides, since it is an agreed fact that both names have been forged, in my judgment the plaintiff ought not to be compelled to try his chance against either of the indorsers, but may, if he will, return the note to the defendants, as he offered to do, in due season, and demand the return of his money, leaving the defendants to seek redress from Mr. Smith or Mr. Gorton, as they shall be advised by counsel.

We advise judgment for the plaintiff.

In this opinion HINMAN, J. concurred. STORRS, C. J. dissented.

Judgment for plaintiff advised.