W. L. CHALLISS v. JOSEPH McCRUM.

PROMISSORY NOTE; *Indorsement, Without Recourse; Implied Warranty.* The vendor of a bill or note, notwithstanding he transfers the same by an indorsement without recourse, impliedly warrants by the very act of transferring that the prior signatures to the paper are genuine, and so far at least as affected by his dealings with or relations to the paper, that it expresses upon its face the exact legal obligations of all such prior parties.

*Error from Atchison District Court.*

McCRUM sued *Challiss* to recover the sum of $229.60, with interest thereon at seven per cent. per annum, from December 10th, 1875, alleged to be due plaintiff on a certain promissory note by defendant, indorsed without recourse, and transferred to plaintiff. At the March Term, 1878, of the district court, the defendant *Challiss* interposed a general demurrer to the petition, which was overruled, and to review this ruling the case is brought here. All necessary facts appear in the opinion.

*W. W. Guthrie*, for plaintiff in error:

In this case there is no question of fraud, concealment, or misrepresentation made in the petition. The case is nothing more nor less than an attempt to recover upon an implied warranty, as arising in the case of a sale, where a fair consideration has been paid for an article which afterward proves to be not what it seemed at the time of the purchase. The true rule in such case is as stated in Parson's Cont., vol. 1, p. 576.

There is no such thing as an implied warranty in the sale of chattels. Where there are no false representations or statements made to mislead and induce the purchaser of a note after maturity or of chattels, the purchaser takes at his own risk. This rule has been followed since the case of *Gill v. Cubbitt*, 3 B. & C. 466, and approved in the following American cases: *Pringle v. Phillips*, 5 Sandf. 157; *Holbrook v. Mix*,

1 E. D. Smith, 154; *Hall v. Hale,* 8 Conn. 336; 32 Vt. 125; 18 Wend. 448.

In order to constitute a warranty, there must be some distinct assertion or affirmation made during a negotiation for sale, which may be supposed was intended to cause the sale, and was operative in causing it. In this case, there is no pretense that Challiss induced McCrum to purchase through any assertions or statements, nor in fact any pretense of anything, except that there was a desire on the part of McCrum to make a purchase of this note and mortgage which had been originally executed by Ege to Probasco, and was then owned by Challiss, and which Challiss sold at a price with which both parties were satisfied, and with no questions asked. (1 Parsons on Cont., p. 572; *Marsh v. Webber,* 13 Minn. 109; *Dumont v. Williamson,* 5 Am. Law Reg. 332.) Challiss was himself a purchaser, as was McCrum in turn, except that Challiss had bought without notice of dishonor by having the note indorsed "without recourse," while McCrum was notified by this special indorsement that he took the note at all risk, and, with this notice, accepted the note without warranty, inquiry, or representation. Not only was there notice by this qualified indorsement of "without recourse," but there is a special contract thereby entered into between the parties, which is in terms "that the seller sells and the buyer buys each at his own risk, and for whatever the note may prove to be worth." (Edwards on Bills, 262, 282.) The reason for this rule is even stronger in the case of the purchase of a note than a chattel; for, in every case of the purchase of a note after maturity, the purchaser takes it as a dishonored bill, at his peril, and subject to every defense existing against it before it was negotiated. (3 Kent's Com. 120, 121; *Andrews v. Pond,* 13 Pet. 65; *Sargent v. Southgate,* 5 Pick. 312, 317, 319.)

*W. D. Webb,* for defendant in error:

1. The payee of a promissory note who transfers it for value, though after maturity, warrants that it is not void for usury.

He warrants that there is no legal defense to its collection arising out of his own connection with it. There is always an implied warranty as to quality as well as title upon every sale of a chattel when the circumstances are such as to imply a knowledge by the vendor of defects in quality; as, where a manufacturer sells articles having defects growing out of the process of manufacture. And whenever the knowledge of a defect is not disclosed, whether it be of title or of quality, the vendor is liable upon a warranty; and whenever the knowledge is shown to exist, then he is liable for a fraud. In every sale of a chattel there is at least an implied warranty that it exists. These principles are sustained by the following authorities: *Buell v. Bissell*, 1 Am. Law Reg. (O. S.), 411; *Delaware Bank v. Jarvis*, 20 N. Y. 226; *Furniss v. Ferguson*, 15 N. Y. 427; *Hurd v. Hall*, 12 Wis., marg. pp. 135, 136; *Aldrich v. Jackson*, 5 R. I. 218; *Thrall v. Newell*, 19 Vt. 203.

2. Here also was a failure of consideration. McCrum bargained for a note on its face purporting to be for $305. It was but for $75.10, and Challiss knew it. McCrum was ignorant of it. The face of this note was a representation of Challiss that the note was for $305. This representation was false, and Challiss knew it. This was fraud. The surface of the note was fair, but underneath was corruption. McCrum could not see this. Challiss was a party to it. *(Jones v. Ryde*, 5 Taunt. 488; *Terry v. Bissell*, 26 Conn. 23; *Merriam v. Wolcott*, 3 Allen, 259; *Gurney v. Womersley*, 4 El. & Bl. 132.)

3. An indorsement "without recourse" implies a warranty that the note is valid. Such an indorsement means simply that the indorser does not assume an indorser's contract to pay the note if demand is made and notice given of nonpayment. That is, by such an indorsement the indorser does not guarantee that the maker is solvent, but he does guarantee that the signatures are genuine, that it is not void for usury, and that there is no defense to it arising out of his connection with it. He cannot be a party to the making of an illegal note and relieve himself from the result of his own

conduct by such an indorsement. To allow this would be to reward fraud. (*Hannum v. Richardson*, 48 Vt. 508; 21 Am. Rep. 152.)

4. The plaintiff in error is bound by the findings of the court and by the judgment in the case of *McCrum v. Ege, et al.,* copies of which are attached to the petition in this action. (*Strong v. Phœnix Ins. Co.*, 62 Mo. 296; *Robbins v. City of Chicago*, 4 Wall. 657; 2 Black, 418; *Miller v. Rhoades*, 20 Ohio St. 494.

The opinion of the court was delivered by

BREWER, J.: On December 4, 1871, plaintiff in error loaned one Edward A. Ege $250, and took his note therefor in the sum of $265, payable to Richard Probasco or bearer, and secured by mortgage. Long after its maturity, and in 1876, several payments having been made thereon in the meantime, plaintiff in error sold the note for its then face value to defendant in error. At the time of such sale he indorsed it, "Without recourse.—W. L. Challiss." McCrum sued on the note. Ege plead usury. The plea was sustained, and McCrum recovered $229.90, less than the face value of the note, for which sum he brought this action. A demurrer to the petition was overruled, and this ruling is now presented for review. Can the action be sustained? Of course no action will lie on the indorsement, for by his written contract Challiss expressly declines to assume the liabilities of an indorser. If sustainable at all, it must be as against him as a vendor, and not as an indorser, and upon the doctrine of an implied warranty. The theory of the defendant in error is, that every vendor of a bill, bond or note impliedly warrants that it is what it purports on its face to be — the legal obligation of the parties whose names appear on the instrument; and that the character of the indorsement or the lack of an indorsement in no manner affects this implied warranty. On the other hand, the counsel for plaintiff in error lays down the broad proposition that "there is no such thing as implied warranty in the sale of chattels;" and that, in the absence

·of express warranty, the maxim *caveat emptor* is of univer-
·sal application. It is clear that the character of the indorse-
ment cuts no figure in the question; as stated, no action will
lie on it. But further, the restriction is only as to his lia-
·bility as indorser, and in no manner affects his relation to the
paper as vendor. ·An unqualified indorsement is the assump-
·tion of a conditional liability. The indorser becomes a new
drawer, and· is liable on the default of the drawee. "With-
·out recourse," does away with this conditional liability. It

*Indorsement without recourse; implied warranty.* leaves the indorsement simply as a transfer of
title, and the indorser liable only as vendor; yet
it leaves him a vendor, and divests him of none
of the liabilities of a vendor. It makes the transaction the
·equivalent of a delivery of paper payable to bearer, and
·transferable by delivery. ·(*Hannum v. Richardson*, 48 Vt. 508.)
Independent, therefore, of any matter of indorsement, what
·implied warranty is there in the transfer of a promissory
note? Two things are clear under the authorities: First,
·that there is an implied warranty of the genuineness of the
·signatures; and second, that there is no warranty of the sol-
·vency of the parties. It is unnecessary to more than refer
to a few of the authorities upon these propositions: Byles
on Bills, pp. 123, 125, and cases in notes; *Jones v. Ryde*, 5
Taunt. 488; *Gurney v. Womersley*, 4 El. & Bl. 132; *Gompertz
v. Bartlett*, 24 Eng. Law & Eq. 156; *Terry v.. Bissell*, 26 Conn.
23; *Merriam v. Wolcott*, 3 Allen, 259; *Aldrich v. Jackson*, 5
R. I. 218; ·*Lobdell v. Baker*, 3 Metc. 469; 1 Addison on Cont.,
p. 152; *Ellis_ v. Wild*, 6 Mass. 321; *Eagle Bank v. Smith*, 5
·Conn. 71; *Shaver v. Ehle*, 16 Johns. 201; *Dumont v. William-
son*, 18 Ohio St. 515; 2 Parsons on Notes and Bills, ch. 2, § 2.
But in the case at bar, the signature of the maker was genu-
ine. The objection is, that it was never his legal obligation
to the full amount for which it purported to be. How far is
·there any implied warranty in this respect? A reference to
some of the leading cases will throw light upon this question.

In *Thrall v. Newell*, 19 Vt. 203, it appeared that one of the
·makers of a note was insane. The vendor made a written

11—22 KAS.

assignment, in which was a description of the note, and the court construed this as an express warranty that the instrument was the legal obligation of the apparent makers, and one being incapable of contracting, gave judgment against the vendor on account of this breach for the amount received by him. While the judgment of the court is rested upon the fact of an express warranty, the judge who writes the opinion expresses his individual conviction that the same result would follow on a mere transfer without any express warranty, and quotes approvingly an extract from Rand's edition of Long on Sales, that "there is an implied warranty in every sale that the thing sold is that for which it was sold."

In *Lobdell v. Baker*, 3 Metc. 469, it appeared that the owner of a note procured the indorsement of a minor, and then put the paper in circulation. He was held liable to a subsequent holder. Chief Justice Shaw, delivering the opinion of the court, says:

"Whoever takes a negotiable security is understood to ascertain for himself the ability of the contracting parties, but he has a right to believe, without inquiring, that he has the legal obligation of the contracting parties appearing on the bill or note. Unexplained, the purchaser of such a note has a right to believe, upon the faith of the security itself, that it is indorsed by one capable of binding himself by the contract which an indorsement by law imports."

In *Hannum v. Richardson*, 48 Vt. 508, a note was given for liquor sold in violation of law, and was by statute void. Defendant knew its invalidity, transferred it by an indorsement without recourse, and he was held liable to his vendee.

In *Delaware Bank v. Jarvis*, 20 N. Y. 226, a usurious note was sold, and the vendor was adjudged liable, not merely for the money received by him, but also the costs paid by his vendee in a suit against the makers of the note. In the opinion, Mr. Justice Comstock uses this language:

"The authorities state the doctrine in general terms that the vendor of a chose in action, in the absence of express stipulation, impliedly warrants its legal soundness and valid-

ity.   In peculiar circumstances and relations, the law may not impute to him an engagement of this sort.   But if there are exceptions, they certainly do not exist where the invalidity of the debt or security sold arises out of the vendor's own dealing with or relation to it.   In this case, the defendant held a promissory note which was void, because he had himself taken it in violation of the statutes of usury.   When he sold the note to the plaintiffs and received the cash therefor, by that very act he affirmed in judgment of law that the instrument was unattainted so far at least as he had been connected with its origin."

In *Young v. Cole*, 3 Bingham (N. C.), 724, certain bonds were sold as Guatemala bonds, which turned out afterward to be lacking the requisite seal, and the vendor, though ignorant of the defect and innocent of wrong, was compelled to refund the money.   The thing in fact sold was not the thing supposed and intended to be sold.

In *Gompertz v. Bartlett*, 24 Eng. Law and Eq. 156, the plaintiff discounted for the defendant an unstamped bill, purporting on its face to have been a foreign bill, drawn at Sierra Leone and accepted in London, but which was in fact drawn in London.   If actually a foreign bill, it required no stamp, and was valid; but being an inland bill, it required a stamp to make it a valid bill in a court of law.   The acceptance was genuine, and the acceptor had previously paid similar bills.   But the acceptor becoming bankrupt, the commissioner refused to allow it against his estate because not stamped. Thereupon plaintiff, who had sold the bill, and been compelled to take it up, brought his action to recover the price he had paid for it, and the action was sustained.   Lord Campbell, before whom the case had been tried, and who then held adversely to the plaintiff, said:

"I then thought that the rule *caveat emptor* applied; but after hearing the argument and the authorities cited, I think the action is maintainable, and upon this ground: that the article sold did not answer the description under which it was sold.   If it had been a foreign bill, and there had been any secret defect, the risk would have been that of the purchaser; but here it must be taken that the bill was sold as and for

that which it purported to be.   On the face of the bill it purported to be drawn at Sierra Leone, and it was sold as answering the description of that which on its face it purported to be.   That amounted to a warranty that it really was of that description."

In *Ticonic Bank v. Smiley*, 27 Me. 225, an overdue note was transferred with this indorsement, "Indorser not holden;" yet it was decided that the indorser was liable to his vendee for any payment made on the note before the transfer, or any set-off existing against it of which the note gave no indication and the vendor no information.

In *Snyder v. Reno*, 38 Iowa, 329, it was held that there is an implied warranty that there has been no material alteration in the paper since its execution.   The court says: " We have no doubt that there is an implied warranty of the transferrer that there is no defect in the instrument, as well as that the signature of the maker is genuine."   See also, *Blethen v. Lovering*, 58 Me. 437; *Ogden v. Blydenburgh*, 1 Hilton, 182; *Fake v. Smith*, 2 Abb. (N. Y.) App. 76; 2 Parsons on Notes and Bills, ch. 2, § 2, and cases in notes; *Terry v. Bissell*, 26 Conn. 23; 1 Daniels on Neg. Instruments, § 670.

In this, the author thus states the law : " When the indorsement is *without recourse*, the indorser specially declines to assume any responsibility as a party to the bill or note; but by the very act of transferring it, he engages that it is what it purports to be—the valid obligation of those whose names are upon it.   He is like a drawer who draws without recourse; but who is neverless liable if he draws upon a fictitious party, or one without funds.   And, therefore, the holder may recover against the indorser *without recourse*, ( 1 ) if any of the prior signatures were not genuine; or, ( 2 ) if the note was invalid between the original parties, because of the want, or illegality of, the consideration; or, ( 3 ) if any prior party was incompetent; or, ( 4 ) the indorser was without title."

These authorities fully sustain the ruling of the district court.   The note was not the legal obligation of the maker to the full amount.   As to the usurious portion, it was as it

were no note. This was a defect in the very inception of the note. It was known to the vendor and arose out of his own dealings in the matter. By all these authorities there is an implied warranty against such a defect, and the vendor is liable for a breach thereof.

The suggestion of counsel that the change in the usury law, by the legislation of 1872, affected the right of recovery upon the note, has been already decided adversely, in the case of *Jenness v. Cutler*, 12 Kas. 500.

The judgment will be affirmed.

All the Justices concurring.